**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Omar Silva, | No. CV-24-00629-PHX-ROS |
| Plaintiff, | **ORDER** |
| v. | |
| Thunderbird Restaurants LLC, et al., | |
| Defendants. | |

This is an action arising under the Fair Labor Standards Act ("FLSA") and Arizona wage laws. Plaintiff filed a Motion for Summary Judgment (Doc 59). Defendants responded (Doc. 64), and Plaintiff replied (Doc. 67). For the reasons below, the Motion will be denied.

## I.    Background

Beginning in February 2024 through approximately March 8, 2024, Plaintiff Omar Silva was employed as a cook at T-Bird Tavern in Scottsdale, Arizona earning $18 per hour. (Doc. 25 ₱ 48-50, 57). T-Bird Tavern is owned and operated by Defendant Thunderbird Restaurants LLC. (Doc. 60 ₱ 1). Thunderbird Restaurants is owned and managed entirely by TB Ventures and Ace High Partners. (Doc. 60 ₱ 2). TB Ventures is owned and operated by Defendant Brandt. (*Id.* at ₱ 3). Ace High Partners is owned and operated by Defendant Cordova. (*Id.* at ₱ 4).

During his employment, Plaintiff was paid in cash, and Juan Salazar, the kitchen manager, generally handled the payments. (*Id.*) Between March 1, 2024, and March 7,

2024, his final workweek, Plaintiff worked a total of 39.3 hours. (*Id.* at 4). The circumstances surrounding Plaintiff's termination are strongly disputed.

Plaintiff alleges he was terminated via text message by Juan Salazar and asked not to return. (*Id.* at 5). As a result, Plaintiff never received his last payment. (*Id.*) Defendants have presented more than one version of events throughout the course of this litigation, but in essence state Defendant Troy Brandt terminated Plaintiff personally, handed him an envelope containing the full $707.39 owed, and watched Plaintiff count the money and acknowledge the payment. (Doc. 63-2 at 3-4). Plaintiff subsequently brought this action and now seeks summary judgment on Counts Two, Three, and Four for failure to pay minimum wage under the Fair Labor Standards act ("FLSA") and Arizona Minimum Wage Act ("AMWA"), and failure to pay wages under the Arizona Wage Act ("AWA").

## II.    Legal Standards

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record that it believes demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The non-moving party must then point to specific facts establishing there is a genuine issue of material fact for trial. *Id.*

At summary judgment, the Court considers only admissible evidence. *See* Fed. R. Civ. P. 56(c)(1)(B). When considering a motion for summary judgment, a court should not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). A genuine issue of material fact exists "if the [admissible] evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248. In ruling on the motion for summary judgment, the Court will construe the evidence in the light most favorable to the non-moving party. *Barlow v.*

*Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991).

### III.    Discussion

To prove liability for failure to pay minimum wage under the FLSA, Plaintiff must show (1) he was employed by Defendants, (2) he was covered under the FLSA, and (3) Defendants failed to pay him at least minimum wage for all hours he worked in a given workweek. 29 U.S.C. § 206(a).

"To state a claim under the AMWA, the defendant must be an employer under the statute, the plaintiff must be a qualified employee of the defendant, and the plaintiff must allege that she was not paid the applicable minimum wage for hours worked." *Smith v. Helton Brewing Co.*, CV-23-01120-PHX-SPL, 2023 WL 5135142, *3 (D. Ariz. Aug. 10, 2023).

Under the Arizona Wage Act, "if an employer . . . fails to pay wages due to an employee, the employee may recover in a civil action against an employer ... an amount that is treble the amount of unpaid wages." Ariz. Rev. Stat. § 23-355(A)." For each of Plaintiff's claims, the issues on summary judgment are (1) whether each Defendant qualifies as an employer, and (2) whether Plaintiff was paid for his final week of work.

#### a.    Employer Status

Plaintiff argues the Court should find all Defendants were Plaintiff's employers under the FLSA and the AMWA. Defendants have admitted Troy Brandt and Thunderbird Restaurants are employers, but contend Ace High Partners, TB Ventures, and Kelley Albert Cordova are not employers because Thunderbird Restaurants was the sole owner and operator of T-Bird Tavern.

Employment status under the FLSA is determined not by "contractual labels" or "technical concepts," but by the economic realities of the employment relationship. *Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 32 (1961); *Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 755 (9th Cir. 1979). In making this determination, the Ninth Circuit considers whether an individual or entity has (1) the power to hire and fire employees, (2) the power to supervise and control employee work schedules, (3) the

- 3 -

power to determine salaries, and (4) the responsibility to maintain employment records. *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1475 (9th Cir. 1983). The FLSA also covers "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages," *Donovan v. Agnew*, 712 F.2d 1509, 1514 (1st Cir. 1983), and "managers are individually liable under the FLSA," *Boucher v. Shaw*, 572 F.3d 1087, 1093 (9th Cir. 2009).

The undisputed facts have established the following structure: T-Bird Tavern, is owned and operated by Defendant Thunderbird Restaurants LLC. (Doc. 60 ⁋ 1). Thunderbird Restaurants is owned and managed entirely by TB Ventures and Ace High Partners. (Doc. 60 ⁋ 2). TB Ventures is owned and operated by Defendant Brandt. (*Id.* at ⁋ 3). Ace High Partners is owned and operated by Defendant Cordova. (*Id.* at ⁋ 4). Plaintiff has presented evidence that Defendant Cordova was personally involved in the operation of T-Bird tavern. Defendants challenge this evidence[1] and offer Cordova's sworn statement that he did not have authority to hire or fire kitchen staff, to set and control rates of pay and work schedules for kitchen staff, or the responsibility to maintain employment records for kitchen staff.

Ownership and management of T-Bird Tavern ultimately traces directly back to Defendants Troy Brandt and Kelley Cordova through their individually owned LLCs, and no other entities or individuals have any similar ownership or control. Absent evidence to the contrary, there is no legal reason to ignore this economic reality and shield those with ultimate and sole ownership and control of a business from FLSA and AMWA liability simply because the business is owned through a multi-level holding structure. All Defendants will be required to defend the claims at trial.

---

[1] Defendants challenge Plaintiff's use of discovery answers submitted by Cordova in another case. This evidence is admissible as a statement of a party opponent and is directly relevant to the issues in this action. *See* Fed. R. Evid. 801(d)(2).

Plaintiff further contends Defendants Thunderbird Taverns, TB Ventures, and Ace High Partners are employers under the Arizona Wage Act. *See* A.R.S. § 23-350. Defendants contend only Thunderbird Taverns is an employer. The Arizona Wage Act defines an employer somewhat more narrowly than the FLSA, covering only "any individual, partnership, association, joint stock company, trust or corporation . . . employing any person." A.R.S. § 23-350. "The available legal opinions interpreting this statutory definition of an 'employer' who is liable for the non-payment of wages by a specified date after the termination of employment does not authorize individual liability against the owners, officers, and directors of a corporate employer in a case where the claim is for the employer's wholesale failure to pay wages." *Valenzuela v. Esser*, CV 22-01180 PHX CDB, 2023 WL 2815548 *4 (D. Ariz. Mar. 14, 2023), *report and recommendation adopted*, CV-22-01180-PHX-CDB, 2023 WL 2814078 (D. Ariz. Apr. 6, 2023). Plaintiff has failed to establish as a matter of law that TB Ventures and Ace High Partners employed him for purposes of the Arizona Wage Act.

### b. Failure to Pay Wages

Plaintiff and Defendants have proffered conflicting evidence regarding whether Plaintiff was paid for his final week of work. Defendants claim Troy Brandt personally terminated Plaintiff and handed Plaintiff an envelope containing the cash payment for his final workweek. Plaintiff alleges he was fired by the kitchen manager via text and was consequently never paid for his final week.

The central and highly disputed evidence in this case is a payroll record for "Omar Silver", for the week of March 1, 2024, through March 7, 2024. The parties agree this is the record for Plaintiff's final workweek. The record reflects a total of 39.3 hours worked, and in the columns for rate of pay and total pay, lists "$0.00." (Doc. 60-9 at 2). Both parties contend this record entitles them to summary judgment; however, the record is, at best, ambiguous, and at worst, deliberately misleading. Interpretation of this record is a genuine question of material fact to be resolved by a jury.

Defendants allege the "$0.00" entries were the marker used by T-Bird Tavern "in

the ordinary course of business to track employees who are paid in cash and could not be verified or entered into our direct deposit system." (Doc. 63-2 ⁋ 21).[2] Additionally, Defendants make the curious assertion that "maintaining the records in this manner is one of the ways T-Bird Tavern ensures its records are accurate and that cash pay employees are paid in full and on time." (*Id.* at ¶ 23) Defendants do not attempt to expand upon how the entry of "$0.00" in payroll records accomplishes those ends.

Defendants argue the payroll records are sufficient to establish Plaintiff was paid because they "facially establish the precise number of hours worked by Plaintiff during his final week, including the specific clock in and clock out time by day." (Doc. 64 at 9). The FLSA requires records not only of the hours worked but also wages paid to an employee. The recordkeeping requirements of the FLSA are "strict" and "an employer's lack of recordkeeping cannot be used to penalize the employee by denying him recovery on the ground that he is unable to prove the precise extent of uncompensated work." *Lopez v. Babas Motorsports LLC*, CV-24-03090-PHX-JJT, 2025 WL 2986859 at *3 (D. Ariz. Oct. 23, 2025). Regardless of whether the records establish the hours Plaintiff worked, a document reflecting "$0.00" in pay does not as a matter of law show a non-zero amount of wages paid and cannot conclusively establish that adequate and legal payment was made simply because an employer claims it does, particularly when the employee here definitively says he was not paid. What is more, no authority establishes Defendants' payroll records create an irrebuttable presumption of nonpayment. Defendants have presented evidence in the form of Troy Brandt's sworn declaration that Plaintiff was paid. Credibility and weight of evidence is not resolved on summary judgment. As such, the question of whether Plaintiff was actually paid for his final workweek is for resolution by the trier of fact.

### IV.   Defendant's Response

Defendants failed to file their own Motion for Summary Judgment but, at the end of their Response to Plaintiff's Motion, they request summary judgment be granted in their

---

[2] Defendants also make the somewhat inconsistent assertion that "T-Bird Tavern did not want to record Plaintiff's time in this manner, but he forced them to." (Doc. 63 at 9-10).

favor. (Doc. 64 at 11).  Although the Court has authority to grant summary judgment for a nonmovant sua sponte, (*see* Fed. R. Civ. P. 56(f) Judgment Independent of the Motion), if a party wishes to seek summary judgment it must do so in a properly and timely filed motion for summary judgment "identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought," Fed. R. Civ. P. 56(a), and "setting forth each material fact on which the party relies in support of the motion," LRCiv 56.1. Defendants' summary judgment claim is procedurally waived, and there are genuine questions of material fact established in the briefs on the Motion for Summary Judgement and Response as to whether each Defendant was an employer and whether Plaintiff was paid for his final week of work. The Motion for Summary Judgment will be denied, and the matter will proceed to trial.

**IT IS ORDERED** the Motion for Summary Judgment, (Doc. 59), is **DENIED**.

**IT IS FURTHER ORDERED** the parties shall prepare and file a Joint Status Report discussing readiness for trial, any remaining possibility of settlement, and whether the parties would like to request the appointment of a Magistrate Judge to conduct a settlement conference. The Joint Status Report shall be filed no later than **May 29, 2026**.

Dated this 19th day of May, 2026.

Honorable Roslyn O. Silver
Senior United States District Judge